HERBERT B. MOLLER AND U. S. WOLFSON BROS. CORP. v. UNITED STATES (No. 4953) [1]

United States Court of Customs and Patent Appeals, February 11, 1959

[1] C. A. D. 704.

*James M. Roberts, Joseph M. Glickstein,* and *McCarthy Crenshaw* for appellants.

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Richard H. Welsh,* trial attorney, of counsel), for the United States.

*Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) *amicus curiae.*

Before WORLEY, Acting Chief Judge, and RICH, and MARTIN, Associate Judges

RICH, Judge, delivered the opinion of the court:

This appeal is from the decision of the United States Customs Court, Second Division, C.D. 1946, overruling the importer's protest and holding that certain tubular steel elbows or bends are not "tubes" within the meaning of paragraph 328 of the Tariff Act of 1930, as modified by the Annecy protocol, T.D. 52373, supplemented by Presidential proclamation, T.D. 52462, but are "fittings" as invoiced. The merchandise was classified by the collector as articles composed in chief value of metal, not specially provided for, under paragraph 397 of the same Act, as modified by the eGneral Agreement on Tariffs and Trade, T.D. 51802. The effect of the Customs Court decision that the imports are fittings is to preserve the collector's classification.[2]

The pertinent parts of the competing provisions are as follows:

Claimed under Paragraph 328, as modified:
Finished or unfinished iron or steel tubes not specially provided for:

\* \* \* \* \* \* \*

Other_____ 12½% ad. val.

Classified under Paragraph 397, as modified:
Articles or wares not specially provided for, whether partly or wholly manufactured:
Composed wholly or in chief value of iron, steel_____
Other_____ 22½% ad. val.

The imported merchandise is seamless steel elbows bent to 45 degree and 90 degree angles. The evidence shows that these elbows were manufactured by heating a length of steel tubing, bending it to the desired angle, cutting to the desired length, beveling the ends, and then cleaning and painting. In use, the merchandise is welded into a system of tubing for the transmission of liquids or gases, and can be removed only by cutting.

To avoid confusion we note that the terms "pipes" and "tubes" as used herein are synonymous.

The Customs Court, in overruling the protest, felt itself bound by this court's opinion in *Green Kay Corp. et al.* v. *United States,* 29 CCPA 216, C.A.D. 193. The merchandise therein consisted of malle-

---

[2] An amicus brief urging affirmance of the judgment below was filed with permission of the court by Barnes, Richardson & Colburn on behalf of the Welding Fittings Research Institute, of Pittsburgh, Pa.

able cast iron, threaded pipe fittings in the form of elbows, tees, and couplings. It was stipulated that they were not used to connect cast iron pipes. The protestants there claimed, as do appellants here, that the goods were properly classifiable, inter alia, as tubes under paragraph 328, the Government contending for classification under paragraph 397, as articles not specially provided for in chief value of iron. It was noted that paragraph 328 includes various types of tubes, pipes, flues, stays and other articles along with the catch-all provision "all other finished or unfinished iron or steel tubes not specially provided for," on which appellants relied (as appellants rely in the instant case), but did not (and does not now) mention fittings. Paragraph 327 makes a specific reference to cast iron fittings for cast iron pipes, and though this paragraph was not directly applicable in the *Green Kay* case, due to a stipulation that the fittings were not for cast iron pipes, this court reasoned that Congress, for tariff purposes, had definitely distinguished between fittings and pipes and therefore "could not have contemplated that the term 'tubes' would include such fittings." The court further held that the context of paragraph 328 "suggests that the term 'tubes' referred to in the pertinent provision of paragraph 328 [the same one relied on here] was not used with the view of covering a fitting * * *." The decision was that the iron pipe fittings were not "tubes" within that provision.

Appellants assert that the *Green Kay* case has no application in the instant case since the fittings therein "*had never been pipes nor tubes* but were cast in their final form from molten iron," (emphasis ours) and when used "did not become a permanent part of the system into which they were incorporated." We do not feel that either the method of manufacture or the use of the merchandise herein constitutes a sufficient basis for such distinction. A 45 or 90 degree elbow is used for exactly the same purpose in a welded pipe or tube system as a 45 or 90 degree elbow in a system of piping connected by threaded joints. In either case they are fittings and it is not disputed here that the merchandise was known as fittings in the trade. The merchandise here may have been made from tubing instead of molten metal but when it was finished it became fittings and though in a sense tubular, we feel it ceased to be "tubes." We cannot agree that a threaded elbow in a threaded pipe system is not, practically speaking, "a permanent part of the system," as argued.

In the instant case the record indicates clearly that the goods are generally known and recognized as fittings, albeit a specialized type, namely, welding fittings. In addition, as in the *Green Kay* case, the issue is whether paragraph 328 or paragraph 397 should apply. We feel that the Customs Court was correct in holding that the reasoning and conclusion of the *Green Kay* case is controlling. Though the merchandise then before the court was a different type of fitting, the

holding was that "tubes" did not include fittings. We therefore affirm the Customs Court's decision that the imported articles are not "tubes" within the meaning of that term as it appears in the portion of paragraph 328 relied on.

Appellants urge that this case should be remanded to the Customs Court because it erred in not passing on the *factual* issues raised by the evidence presented, that is, "whether or not the imported merchandise came within the term 'tubes' as used in the Tariff Act of 1930." Applicability of this provision of the statute to the imported merchandise is, however, a question of *law*. Appellant is wrong in calling the issue of whether the welding fittings were "tubes" a "factual issue" and also wrong in saying the Customs Court did not decide this issue. It found the imported elbows were fittings and were not tubes. It is true that the Customs Court did not make an explicit determination of whether the articles in dispute were, according to the evidence, known as tubes as that term is commonly or commercially understood, however such a determination would have been superfluous. The Customs Court, in considering the evidence and questions presented, correctly concluded that the precedent set by the *Green Kay* case governed the classification of the merchandise in dispute.

Appellants cite several cases in support of the contention that "* * * whatever they were known as, they still were tubes as defined by the courts in various cases * * *." We have examined each of the cases cited but find only one which concerned goods even remotely similar to those at bar, *Davis-Bilt Products Co.* v. *United States*, 28 Cust. Ct. 332, C.D. 1432, where the imported merchandise consisted of tubular steel structures in the shape of doughnuts, called torus tubes. The single witness in the case testified that the tubes were used by cutting them into bends of the arc desired and welding them to straight tubes for piping purposes. However, it is clear that these torus tubes, *as imported*, were not fittings, and on this point alone the *Davis-Bilt* case is clearly distinguishable.

The decision of the Customs Court is *affirmed*.